IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan M. Hartman,                          :
                        Petitioner         :
                                           :
        v.                                 :        No.  985 C.D. 2019
                                           :        Submitted:  May 12, 2020
Unemployment Compensation Board            :
of Review,                                 :
                        Respondent         :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                          FILED:  August 14, 2020

        Susan M. Hartman (Claimant) petitions for review from an order of the
Unemployment Compensation Board of Review (Board), finding her ineligible for
unemployment compensation (UC) benefits pursuant to Section 402(b) of the
Unemployment Compensation Law (Law).[1]    Claimant argues that the Board
capriciously disregarded competent, critical evidence in rendering its decision and
that it failed to explain its reasoning in sufficient detail to allow for meaningful
review.  Claimant acknowledges she provided evidence at her hearing before the UC
referee that was contrary to statements made to the UC service center, but claims
that she adequately explained the inconsistency.  Claimant adds that the Board
disregarded a separation agreement between her and Pennsylvania Messenger
Solutions, Inc. (Employer) and offered no explanation as to why it found her

_____
        [1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§802(b).

statements to the UC service center to be credible while not crediting the statements she made under oath before the UC referee. For the reasons that follow, we affirm the order of the Board.

## I.    Background

On or about February 4, 2019, Claimant, who had been a trainer for Employer, applied for UC benefits. On February 19, 2019, the local service center denied UC benefits pursuant to Section 402(b) of the Law.[2] Claimant appealed, and a UC referee conducted a hearing that was attended only by Claimant and her legal counsel, as Employer did not participate. Certified Record (C.R.), Item No. 8. Relevant here, the hearing notice stated, in pertinent part:

> SPECIFIC ISSUES to be considered in this appeal - See attached list of issues for additional information.
>
> # 15 - Section 402(b) - Whether claimant's unemployment was due to voluntarily leaving work without cause of necessitous and compelling nature.
>
> OTHER ISSUES that may be considered - See attached list of issues for additional information.
>
> # 17 - Section 402(e) - Whether claimant's unemployment was due to discharge or temporary suspension from work for willful misconduct connected with employment.
> # 1 - Section 3 - Whether claimant's suspension or discharge was the result of non-work related conduct and was due to the claimant's own fault. . . .

---

[2] On her "Internet Initial Claims" form, Claimant stated that she quit her position with Employer due to personal reasons. Specifically, Claimant noted that she quit because she "need[ed] to help care for [her] mother/[a]nd help [her] daughter with children." Certified Record (C.R.), Item No. 2.

C.R., Item No. 7.

Prior to the hearing, Claimant had served subpoenas on representatives of Employer to appear at the hearing and to bring "Claimant's statement to the Employer explaining why she was resigning dated 1/25/19." C.R., Item No. 7, Exs. R9 and R10. Employer supplied the subpoenaed document but explained that it was not contesting Claimant's appeal of the UC service center's determination and that the subpoenaed employees were unable to attend the hearing. C.R., Item No. 7, Ex. R12.

At the hearing, Claimant testified that she last worked for Employer on January 25, 2019,[3] and that her employment had been "terminated." C.R., Item No. 8, Hearing Transcript, Notes of Testimony (N.T.) at 6. She further testified that Employer's president, Michael Heim, told her the reason for her termination was because she was "dishonest." *Id.* She acknowledged signing a separation agreement, because she was going to be terminated anyway and that Mr. Heim told her he was "going to put down that [she] resigned." *Id.* Claimant testified that she was "confused" and that was why she stated something different when she made her initial claim for UC benefits. C.R., Item No. 8, N.T. at 8. Claimant further testified that Employer's office manager came to her home to have her sign the separation agreement and to inform her that she, *i.e.*, Claimant, needed to write a resignation statement. C.R., Item No. 8, N.T. at 9.

---

[3] Later in her testimony, Claimant stated that the last date she was physically in the office was January 7, 2019. However, she received paid time off after that. She testified to receiving $4,160.00 as part of a "separation agreement" with Employer. C.R., Item No. 8, Hearing Transcript, Notes of Testimony (N.T.) at 9-10.

Claimant's counsel noted that Employer did not appear for the hearing "to prove their [sic] burden that they [sic] fired [Claimant] for willful misconduct[4] and therefore they [sic] [had] not met their [sic] burden." C.R., Item No. 8, N.T. at 10. The referee responded to this point as follows:

> I usually don't comment on closing statements, but I do want to make it clear for the record that because the Employer didn't provide any information, the only information the Department [of Labor and Industry] had was [Claimant's] information saying she voluntarily quit. So the specific issue before me today is Section 402 (b) which is [sic] burden on the Claimant. There is no indication that there was a discharge. And so that issue is not before me in today's hearing because this is the first that there's any indication about a discharge. So when you say that the Employer didn't meet their [sic] burden, I can't even consider that section of law because it's not listed as a specific issue.

*Id.*

Subsequently, the following exchange[5] ensued between Claimant's legal counsel and the UC referee:

> **[Claimant's Attorney**:] Respectfully, Referee, it is listed as an issue. The willful misconduct is listed as an issue.
>
> **[Referee**:] As other issues which may be considered; however, the Board requires that the specific issues to be considered in the

---

[4] Section 402(e) of the Law states, in pertinent part, that "an employe shall be ineligible for compensation for any week—[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment' as defined in this act." 43 P.S. §802(e).

[5] Reproduced verbatim, or essentially verbatim, from the UC referee hearing transcript. C.R., Item No. 8.

hearing that the only issues I can literally rule on, are the specifics [sic] issues that are listed. And that gives notice to the parties that these are the issues that will be considered. Others that may be considered, there are several others, however, if both parties are not here to grant me to agree, to allow me to consider those sections, they are not before [me]. And I have tried it before where I had other issues that may be considered and ruled on those and one party is not there, the Board has actually sent them back with directions saying they must be listed as a specific issue in order for the Referee to consider that section of law. So it's just standard practice in most of the Referee's [sic] Offices to list the other separation sections as other issues that may be considered in case it comes up at the hearing. If it does come up at the hearing, I still have to have both parties grant me permission to rule if it's not listed as a specific issue.

**[Claimant's Attorney**:]  Okay, that is not my understanding of the law and I do believe that you can consider those issues and I wish I had the case in front of me, but it also one of the reasons that when the Referee's Office sends out a List of Issues, they also (inaudible) and hear [sic] are all the other issues. . . .  In this case we had a Claimant who was confused about what she had to say and what she had to do because of the separation agreement. However, she has come in and testified truthfully that she was fired and so that she's the only evidence that we have to present.

**[Referee**:] Okay. At this -- that I just wanted to put it on the record that I'm only allowed to rule under specific issues to be considered in the appeal. . . .  [W]e, as Referees have been told from our Board and from our direction that unless it's listed as a specific issue we must -- the other issues may be considered but that means that we have to get permission from both parties. The Employer is not here to allow me to consider 402 (e).  Had I had any indication that that was a potential issue, I could have assessed the specific issue and I could have addressed it regardless of whether the Employer appeared or not appeared.

C.R., Item No. 8, N.T. at 10-11.

Claimant's counsel requested a continuance so that the issue of Claimant's termination could be listed as a "specific issue" in a subsequent hearing notice. C.R., Item No. 8, N.T. at 11. In response, the UC referee stated:

> I'm not going to grant that continuance at this time. There's nothing in the appeal that even references termination. So, I'm going to rule with what I have. I mean I have a couple options; one is I can rule with what I have or I can send it back to the Service Center for them [sic] to consider 402 (e). But I believe that it would probably be in the best interest of [Claimant] for me to make a Decision because if I send it back to the Service Center to give them [sic] the opportunity to rule on that, it could take longer. But your request for continuance at this time, because I had no -- to me that's not a cause for continuance, so that request is denied. . . .

C.R., Item No. 8, N.T. at 11-12.

The referee issued a decision in which she made the following findings[6]:

> 2. On January 25, 2019, the Claimant signed a Confidential Separation Agreement and General Release and received $4,160 separation payment.
>
> 3. On January 25, 2019, the Claimant provided a written resignation letter addressed to Michael Heim, President of [Employer], which stated, "I regretfully need to inform you that I will need to depart working at [Employer]. There has been an unforeseen event in my family and am needed to help care for a family member."
>
> 4. On February 4, 2019 . . . the Claimant filed an Application for Benefits through the internet and provided that she quit for

---

[6] These findings are reproduced verbatim, or essentially verbatim, from the UC referee's decision. C.R., Item No. 9.

6

personal reasons, explaining "I need to help care for my mother/[a]nd help daughter with children."

5. The Claimant further provided on the internet initial claims document "My sister needs help caring for my mother. Also, my daughter needs help with her children as she went back to college. As soon as a schedule is worked out I will be able to seek employment."

6. The Altoona UC Center issued a Notice of Determination finding the Claimant to be ineligible for benefits under Section 402(b) of the Pennsylvania UC Law beginning with waiting week ending February 9, 2019, finding the Claimant quit because she needed to take care of her mother.

7. The Claimant filed a timely Petition for Appeal which stated, in part, ". . . [t]he Claimant endured a family emergency which required her attention in another state (NJ). The family situation requires the Claimant to be aware [sic] from her employer for extended periods of time as she must care for her ailing mother. . . ."

C.R., Item No. 9, UC Referee's Dec., 4/16/19, Findings of Fact (F.F.) Nos. 2-7.

The referee added:

Section 402(b) of the [Law] provides that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. The Pennsylvania Courts have held that an employee who claims to have left employment for a necessitous and compelling reason must prove that: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve the employment. The Pennsylvania Courts have consistently held that good faith requires a claimant to show that prior to terminating the employment, the problem which necessitated the

7

quit was communicated to the employer. Once the employee has informed the employer of the problem, however, the burden shifts to the employer to offer a suitable accommodation. In the present case, at the hearing the Claimant testified that she was terminated after her Employer accused her of being dishonest. There was nothing in the documents the Claimant provided to the UC Service Center to indicate the Employer initiated the separation. The Claimant offered a separation agreement which she and the Employer signed. However, the document indicates there was a separation. Counsel for the Claimant requested a subpoena for the "Claimant's statement to the Employer explaining why she was resigning dated 1/25/19." The Employer's counsel provided the statement to the Referee's Office. The statement indicates the Claimant voluntarily quit for personal reasons. The Claimant did not provide testimony regarding quitting her employment. The Referee cannot find that the Claimant has established a necessitous and compelling reason for leaving employment at the time the Claimant did or that the Claimant acted with ordinary common sense and made a good faith effort to preserve the employment. Accordingly, benefits must be denied under Section 402(b) of the Pennsylvania UC Law . . . .

The determination of the UC Service Center is AFFIRMED; the Claimant is INELIGIBLE for benefits under Section 402(b) of the . . . Law. . . .

C.R., Item No. 9, UC Referee's Dec., 4/16/19.

Claimant appealed to the Board which, after reviewing the record without an additional hearing, issued the following order:

The [Board], after considering the entire record in this matter, concludes that the determination made by the Referee is proper under the [Law]. Therefore, the Board adopts and incorporates the Referee's conclusions. The Board adds a finding, which shall read, "The claimant voluntarily quit for personal reasons." The Board adopts and incorporates the remainder of the Referee's findings.

8

In her appeal, the claimant argues that she was fired and did not quit. The Referee clearly discredited the claimant's testimony and the Board finds no reason to disturb this credibility determination. The Board specifically discredits the claimant's testimony that she was discharged, and credits the claimant's Petition for Appeal and Internet Initial Claims form, where the claimant clearly stated she quit and did not say she was fired. The claimant also argues that the Referee should have granted her a continuance to allow a new hearing notice to be provided to all parties to include the issue of willful misconduct. The Referee explained that she was not going to grant such a continuance because there was nothing in the claimant's appeal that even referenced termination. The Referee permitted the claimant to testify about discharge, but the Referee did not credit the claimant on this, and neither does the Board. The claimant quit due to personal reasons, and she has not proven that she explored alternative and less drastic solutions than quitting her job for her family situation before quitting.

. . . .

The decision of the Referee is affirmed.

C.R., Item No. 12.


## II. Petition for Review

Claimant filed a petition for review[7] with this Court arguing that the Board capriciously disregarded competent, critical evidence in rendering its

_____

[7] Our review is limited to determining whether the Board's findings were supported by substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011 (Pa. Cmwlth. 2008). The Board's findings of fact are conclusive on appeal as long as they are supported by substantial evidence. *Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422 (Pa. 2003). "Substantial evidence is defined as evidence a reasonable mind might accept as sufficient to support the conclusion reached." *Frimet v. Unemployment Comp. Bd. of Review*, 78 A.3d 21, 26 n.7 (Pa. Cmwlth. 2013). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the

determination and asserting that the Board failed to sufficiently explain the reasons for its determination in order to allow for meaningful review. As noted previously, Claimant adds that the Board disregarded the separation agreement that was in evidence and offered no explanation as to why it found Claimant's statements to the service center to be credible but did not find her statements made under oath, at the hearing before the UC referee, to be credible.

## A. Applicable Law and the Positions of the Parties

"[T]he [Board] is the ultimate factfinder in [UC] matters . . . ." *Sipps v. Unemployment Comp. Bd. of Review*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018) (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008)). As the factfinder, the Board is entitled to make its own credibility determinations regarding witnesses. *Serrano v. Unemployment Comp. Bd. of Review*, 149 A.3d 435 (Pa. Cmwlth. 2016). These credibility determinations are not questioned on appellate review. *Id.* "It is irrelevant whether the record contains evidence to support findings other than those made by the factfinder; the critical inquiry is whether there is evidence to support the findings actually made." *Ductmate Indus., Inc.*, 949 A.2d at 342.

Claimant avers that the Board issued an order adopting the UC referee's conclusions, adding the finding of fact: "Claimant voluntarily quit for personal reasons." Pet'r's Br. at 8; C.R., Item No. 12. Claimant argues that this was based on statements she made to the UC service center but that the Board disregarded her

---

prevailing party, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738 (Pa. Cmwlth. 1986).

testimony and the separation agreement admitted into evidence at the hearing before the UC referee.  C.R., Item No. 8; N.T. 6-7, Claimant's Ex. 1.  Citing this Court's opinion in *Bertram v. Unemployment Compensation Board of Review*, 206 A.3d 79 (Pa Cmwlth. 2019),[8] Claimant asserts that the Board, in the present case, failed to acknowledge critical, relevant evidence and failed to explain its decision in enough detail to permit meaningful review.[9]

Claimant maintains that the separation agreement to which she refers notably states that Employer "has decided to end its employment relationship with [Claimant] for legitimate business reasons," will only provide neutral references to potential employers, and will "not release information regarding [Claimant's] termination or eligibility for rehire, provided Claimant directs all requests for references to Michael Heim."  C.R., Item No. 8, Claimant's Ex. 1.  Claimant asserts that the agreement further provides that the employment relationship between Claimant and Employer is to be permanently ended.  Pet'r's Br. at 13.  Claimant also contends that the Board ignored the fact that Employer disregarded the subpoenas to appear at the hearing before the UC referee, and that had the subpoenaed employees appeared as required, they could have either disputed, or confirmed, Claimant's testimony she was fired.  Pet'r's Br. at 13.

---

[8] A capricious disregard of evidence occurs where the factfinder completely ignores overwhelming evidence without comment. *Bertram v. Unemployment Comp. Bd. of Review*, 206 A.3d 79, 83 (Pa. Cmwlth. 2019) (citing *Wise v. Unemployment Comp. Bd. of Review*, 111 A.3d 1256 (Pa. Cmwlth. 2015)).  "Implicit credibility determinations do not resolve the conflicts between . . . testimonial and documentary evidence." *Bertram*, 206 A.3d at 84-85.

[9] While the Board is the ultimate finder of fact, it must explain its decision in sufficient detail to permit meaningful review. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383 (Pa. 1985).

11

Claimant argues that, in *Bertram*, the UC referee did not make any credibility findings, and the Board affirmed the referee without making any credibility findings of its own, determining, instead, that by disregarding the testimony of a witness, the UC referee had actually made an implicit credibility determination. Pet'r's Br. at 13. Claimant argues that, in *Bertram*, this Court rejected the Board's argument about an implicit credibility finding and stated that silence by the UC referee on the credibility of a witness does not imply a credibility determination, further noting that an implicit credibility determination does not resolve a conflict between testimony and documentary evidence. Pet'r's Br. at 13, (citing *Bertram*).

Claimant maintains that, in the present matter, the UC referee did not make any credibility determinations but that the Board did, relying on an implicit credibility determination by the referee to do so. Claimant states:

> In fact, it wasn't that the referee indicated in any way that she thought Claimant was not credible, she did not believe she could consider the issue of discharge and willful misconduct and was bound by law to consider only the issue considered below.

Pet'r's Br. at 14.

Claimant asserts that the Board found she

> voluntarily quit for personal reasons, discredited her testimony that she was discharged, and ignored all other evidence including the separation agreement and the fact that [E]mployer did not participate at any phase of the proceeding and disobeyed the referee's order that [Employer's witnesses appear at the hearing]. The Board has not resolved conflicts in evidence, has not

12

explained why it has found [Claimant's] representations to the service center credible but not her testimony under oath, has ignored documentary evidence which supports a finding that [Claimant] was fired, and has found . . . in favor of a party which failed to participate even after being issued a subpoena and which sent to the referee a statement that it did not contest [Claimant's] appeal.

Pet'r's Br. at 16.

In response to Claimant's assertions, the Board contends it made explicit credibility determinations regarding conflicting evidence in the record as to whether Claimant quit or was discharged and that the evidence the Board credited is substantial competent evidence which supports its determination that Claimant quit her employment. Resp't's Br. at 5. The Board notes that statements by parties reflected on Department[10] records constitute party admissions and are competent to support a finding of fact.[11] Resp't's Br. at 7. The Board further asserts that Claimant's admissions in documents in the record support the finding that Claimant quit her employment.

To support its contention that Claimant's admissions support the Board's findings, the Board notes that Claimant filed an application for UC benefits through the internet and indicated she quit for personal reasons, explaining, "I need

---

[10] The term "Department" as used here, and throughout this Opinion and Order, is a reference to the Pennsylvania Department of Labor & Industry.

[11] The Board references *Havrilchak v. Unemployment Compensation Board of Review*, 133 A.3d 800, n. 3 (Pa. Cmwlth. 2015) (statements in submissions like the "claimant questionnaire," the "internet claim form," and the "initial interview form," constitute party admissions that are admissible as an exception to the hearsay rule), and *Sargent v. Unemployment Compensation Board of Review*, 630 A.2d 534 (Pa. Cmwlth. 1993) (the claimant's statements reflected on a summary of interview form constitute party admission). Resp't's Br. at 7.

to help care for my mother/[a]nd help daughter with children" and that Claimant further stated on the form that she quit because "[m]y sister needs help caring for my mother. Also, my daughter needs help with her children as she went back to college. As soon as a schedule is worked out I will be able to seek employment." C.R., Item No. 2. The Board asserts that this evidence is competent and was specifically credited by the Board. The Board further asserts that it credited Claimant's petition for appeal from the Department's determination which states: "Claimant endured a family emergency which required her attention in another state (NJ). The family situation requires . . . Claimant to be away from her employer for extended periods of time as she must care for her ailing mother . . . ." Resp't's Br. at 8. The Board maintains that additional evidence that Claimant quit her employment is found in her January 25, 2019 handwritten, and signed, resignation, in which she stated: "I regretfully need to inform you that I will need to depart working . . . . There has been an unforeseen event in my family and am needed to help care for a family member." C.R., Item No. 8, Claimant's Ex. C2. The Board argues that all of the above statements constitute admissions by Claimant that she quit and are substantial competent evidence supporting the Board's determination. Resp't's Br. at 8-9.

In addition, the Board contends it did not capriciously disregard Claimant's testimony she was discharged. Instead, it considered Claimant's testimony to that effect and specifically discredited it. Resp't's Br. at 9.

In response to Claimant's argument that the Board refused to enforce the subpoena(s) which would have given Claimant the opportunity to question Employer's representatives about whether she was discharged, the Board asserts that

14

Claimant did not request it to enforce the subpoenas, thus, it did not *refuse* to enforce them.[12]  The Board notes Claimant submitted a brief to the Board but that she did not mention Employer's non-appearance at the hearing or request enforcement of the subpoenas.  Resp't's Br. at 9, n.1.

In addition, the Board argues that Claimant's reliance on *Bertram* is misplaced because that case is distinguishable from the present matter.  The Board contends that the Court, in *Bertram*, held the Board capriciously disregarded relevant competent evidence when "the highly relevant testimony of a disinterested third party did not elicit a single comment from the factfinder." *Bertram*, 206 A.3d at 84.  The Board adds that the Court, in *Bertram*, also held that the implicit credibility determinations the Board argued it made through its findings of fact did not resolve the conflicts between the testimonial and documentary evidence in the case.  *Id.* at 84-85. The Board argues, here, that its order allows for meaningful appellate review

_____

[12] Section 101.34 of the Board's regulations, 34 Pa. Code §101.34, states in pertinent part:

> (a) When a person refuses, fails or neglects to comply with a subpoena issued under the [Law], or refuses, fails or neglects to produce books, papers, correspondence, memoranda or other records and documents, *a party to the appeal proceedings may request the Board to petition a Court of Common Pleas having jurisdiction to require the person subpoenaed to appear and give testimony and to produce the books, papers, correspondence, memoranda or other records and documents described in the subpoena.  (b) The request to the Board shall be in writing and shall set forth the facts as to the issuance and service of the subpoena . . . .* The Board will give notice by mail to the person alleged to have refused, failed or neglected to comply with the subpoena . . . the Board may proceed to compel such compliance as provided in this part.

34 Pa. Code §101.34 (emphasis added).

15

because the referee specifically acknowledged the separation agreement in her decision and ultimately concluded Claimant quit her employment. The Board adds that, unlike in *Bertram*, the Board acknowledged Claimant's argument she had been terminated and made an explicit credibility determination. Thus, by considering the separation agreement, and crediting documentary evidence that conflicted with Claimant's testimony and the agreement itself, the Board resolved the conflict in evidence against Claimant, providing sufficient explanation of why Claimant's benefits were denied and allowing for meaningful appellate review.

The Board argues that Claimant did not prove she had a necessitous and compelling reason for quitting because she consistently maintained at the hearing that she did not quit and offered no alternative reason for quitting. In sum, the Board argues its findings of fact are based on the substantial competent evidence of record and support the conclusion that Claimant quit her employment.

## B. Analysis

In its opinion, the Board states "the [r]eferee clearly discredited the claimant's testimony and the Board finds no reason to disturb this credibility determination." C.R., Item No. 12. The Board adds that it "specifically discredits the claimant's testimony that she was discharged, and credits the claimant's Petition for Appeal and Internet Initial Claims form, where [she] clearly stated she quit and did not say she was fired." *Id.* "The [r]eferee permitted the claimant to testify about discharge, but the [r]eferee did not credit the claimant on this, and neither does the Board." *Id.*

16

Claimant, here, did not raise the issue of discharge prior to her hearing before the UC referee. In fact, she made a number of assertions about voluntarily quitting her position, including statements in some of the earliest filed documents in the case. We agree with the Board's position that Claimant's statements on her Initial Internet Claims form and other documentation, in which she stated she was quitting her job for personal reasons, constitute admissions and are competent to support a finding of fact that Claimant voluntarily quit her employment. Weighing these admissions against Claimant's later contentions that her employment was terminated, the Board made explicit credibility determinations regarding the conflicting evidence, and the evidence the Board credited is substantial competent evidence supporting its determination that Claimant quit her employment. In addition, and as both the referee and the Board determined, Claimant never satisfied her burden of establishing that her voluntary quit was due to necessitous and compelling reasons and that she made a reasonable effort to preserve her position with Employer.

We acknowledge that the UC referee, as evidenced in the hearing transcript, limited her evaluation of Claimant's case to Section 402(b) of the Law because she believed she was constrained to do so. To this point, we believe the referee could have addressed the issue of discharge as Employer was on notice of the hearing and was on notice that discharge, under Section 402(e) of the Law, was a potential issue.[13] *See* C.R., Item No. 7. However, the Board did not ignore the

---

[13] We note here that, in *Michael v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 998 C.D. 2015, filed March 9, 2016), a case in which the UC referee determined that the claimant left work voluntarily, and, therefore, the case should be reviewed in accordance with Section 402(b) of the Law, and not Section 402(e) of the Law, 43 P.S. §802(e), this Court

17

issue as Claimant asserts. In its opinion, the Board specifically stated that the referee permitted Claimant to testify about discharge but that the referee did not credit Claimant on the matter and neither did the Board. In fact, the Board stated it specifically discredited Claimant's testimony that she was discharged and credited Claimant's "Petition for Appeal and Internet Initial Claims form" where she "clearly stated she quit and did not say she was fired." C.R., Item No. 12.

As for whether Employer's witnesses should have been compelled to attend, we disagree with Claimant that the Board should have required same, as Claimant did not request the Board to petition a court of common pleas having jurisdiction to require the person subpoenaed to appear and give testimony, as required by 34 Pa. Code §101.34. Thus, we discern no error by the Board in this regard.

### III.    Conclusion

Upon review, we affirm the Board's opinion that Claimant was not unreasonably denied UC benefits under Section 402(b) of the Law. The Board's findings, including its credibility determinations, are sufficiently supported by the record.

The referee determined, and the Board concurred, that Claimant did not provide testimony regarding quitting her employment and did not establish a

---

stated that "[t]he hearing notice indicated Section 402(b) was *another issue* that could be considered at the referee hearing," (emphasis added), and the matter was ultimately decided under Section 402(b) of the Law. *Id*. at n.9.

18

necessitous and compelling reason for leaving employment and making a good faith effort to preserve that employment. Claimant's appeal is an attack on the Board's findings and credibility determinations. However, we reiterate here that "[i]t is well settled that the Board is the ultimate finder of fact in unemployment compensation proceedings." *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). "[I]ssues of credibility are for the Board which may either accept or reject a witness' testimony whether or not it is corroborated by other evidence of record." *Id*. These credibility determinations are not questioned on appellate review. *Serrano*, 149 A.3d 435.

As the Board is the ultimate finder of fact, the Board's opinion was based on the substantial competent evidence of record, and there was no error of law or abuse of discretion, there is no basis for us to disturb the outcome in the present matter. Thus, the opinion of the Board is affirmed.

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan M. Hartman,                          :
                    Petitioner             :
                                           :
            v.                             : No.  985 C.D. 2019
                                           :
Unemployment Compensation Board            :
of Review,                                 :
                    Respondent             :

# **O R D E R**

**AND NOW**, this 14th day of August 2020, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

_____
J. ANDREW CROMPTON, Judge